## FLAGG *vs.* WILLINGTON.

To impeach the title of the demandant in a writ of entry, on the ground of fraud, evidence of the fraudulent intent of his grantor in the conveyance of other lands, to another person at a prior time, though with the connivance of the demandant, who was his brother-in-law, is not admissible.

In this case, which was a writ of entry on the seisin of the demandant, both parties claimed title under one *David Lovering*; the demandant claiming by deed from him, dated *Aug.* 26, 1820; and the tenant by virtue of the extent of an execution in his own favor against *Lovering, April* 5, 1823. The judgment was recovered upon a promissory note, made in 1812.

At the trial before *Parris J.* the tenant impeached the title of the

demandant, as fraudulent and void against creditors ; and proved that the demanded premises were conveyed to *Lovering* by one *Briggs*, by deed dated *June* 5, 1819, and recorded *Aug.* 26, 1820, in exchange for other real estate, which *Lovering*, on the same day, conveyed to *Briggs*. And the tenant offered to prove by *Briggs*, that when he and *Lovering* were about to exchange deeds, the legal title to *Lovering's* real estate, for which the demanded premises were exchanged, was found to be in one *Lane*, by deed given by *Lovering* to him in 1814 ; that *Lovering* said he put the farm into *Lane's* hands for his own security, as " he was owing a man at the west a considerable of a sum." And he further offered to prove by *Lane* that *Lovering* applied to him to take the deed, giving as a reason, that " a man at the westward, by the name of *Willington*, had a note or notes against him ; that he had paid the notes, but had forgotten to take them up ; and he was afraid *Willington* would come upon him, and make him pay them over again." To the admission of this evidence the demandant objected ; but the judge, intending to reserve the question, admitted it as tending to prove the fraudulent intention of *Lovering*, in his deed to the demandant ; but instructed the jury to give it no weight, unless they should be satisfied, from other testimony, that the demandant had knowledge of this fraudulent conveyance to *Lane*, and that the same property was exchanged for the demanded premises. It was also proved that *Lovering* was insolvent, and that he executed the deed to the demandant, his brother-in-law, while he was in prison, and soon after took the poor debtor's oath.

The jury returned a verdict for the tenant, which was taken subject to the opinion of the Court upon the admissibility of the evidence objected to.

*Fessenden* and *Deblois* for the demandant, cited *Somes v. Skinner*, 14 *Mass.* 360 ; *Clark v. Waite*, 12 *Mass.* 439 ; *Kimball v. Morrell*, 4 *Greenl.* 368.

*Emery* and *Longfellow*, for the tenant, argued in support of the verdict, on the ground that the testimony showed the original conception of a fraudulent intent against this very creditor, of which the demandant was conusant at the time, and which he afterwards assisted

to carry into more complete effect. *Bridge v. Eggleston*, 14 *Mass.* 245 ; 3 *Taunt.* 303 ; *Bauerman v. Radenius*, 7 *D. & E.* 663 ; *King v. Harwich*, 11 *East.* 578.

MELLEN C. J. delivered the opinion of the Court at the adjournment in *August* following.

The demandant's title, as disclosed, is elder than the tenant's ; and, therefore, as both parties claim under *Lovering*, unless his deed to the demandant is impeached on the ground of the alleged fraud, he is entitled to a verdict. The premises demanded were once the undisputed property of *Briggs* ; and while he was the owner he conveyed them to *Lovering* by his deed bearing date *June* 5, 1819, in exchange for other lands which *Lovering* on the same day conveyed to *Briggs*. There is no evidence in the case, nor is it intimated, that in the above transaction between *Briggs* and *Lovering*, there was any thing fraudulent, except that the deed to *Lovering* was not registered till about fourteen months after its date, viz. *August* 26, 1820, the same day on which the deed from *Lovering* to the demandant is dated. It is so common a practice for grantees to neglect to place their deeds on record in due season, that such delay in the present instance furnishes of itself no evidence of fraud. We may as well suppose that it was recorded on the day when the demandant purchased of *Lovering*, in consequence of a suggestion from the purchaser, so that the title might regularly appear on record ; but we need not presume either way. It does not appear in the case that this point was presented to the consideration of the jury. The defence was grounded on the evidence of the transactions between *Lovering* and *Lane* in the year 1814, and of the motives which governed them on that occasion. On these points the cause was submitted to the jury, as appears by the instructions of the judge. The evidence, in relation to those transactions was introduced and admitted for the purpose of proving, or as tending to prove, the fraudulent intention of *Lovering* in making his deed to the demandant. The instruction to the jury was that they would give no weight to this evidence, unless they were satisfied, by other evidence, that the demandant had knowledge of *Lovering's* conveyance to *Lane*

for the purpose of defrauding his creditors. This was evidently an instruction to them to find for the tenant on this evidence, if they were satisfied of a *scienter* on the part of the demandant. Was this evidence properly admitted, and were these instructions correct?

The cases of *Loker v. Haynes*, 11 *Mass.* 499 ; *Hill v. Payson*, 3 *Mass.* 559, and *Bridge v. Eggleston*, cited in the argument, do not carry the principle so far as this. It is in the last case laid down in these words ; " the conduct and declarations of the grantor, respecting the estate conveyed, and tending to prove a fraudulent intention on his part, before the conveyance, are proper evidence for the jury, upon an inquiry into the validity of such conveyance, by a creditor or subsequent purchaser, who alleges it to be fraudulent." We know of no case which has extended the principle farther than this decision. Injustice may be the consequence of sanctioning a verdict founded on the reported evidence. The proof in *Bridge v. Eggleston* applied to the deed under which the tenant claimed, and to no other ; but in the case at bar such was not the fact. Its application was to a deed of another farm, executed about six years before, to another grantee ; which deed must have been re-delivered to *Lovering* prior to his conveyance of the same land to *Briggs*, who now holds the title of it, unmolested and unquestioned. The defence is nothing more than this ; *Willington* says to *Flagg* " you have no title to the premises demanded ; your title deed from *Lovering* is fraudulent, and was made by him and accepted by you, for the purpose of cheating his creditors. My proof of the fraud is this. Six years before *Lovering* made his deed to you, he fraudulently conveyed a farm, which he then owned, to one *Lane*, for the purpose of protecting it from my reach. It is true *Lane* never attempted to retain the land ; and about six years afterwards he re-conveyed it to *Lovering*, and then *Lovering* conveyed it to *Briggs*, and *Briggs* conveyed to him a farm in another town ; and this last farm he conveyed to you, and therefore your title amounts to nothing." To us this appears to be very inconclusive reasoning. A man may at one period of his life, actuated by fraudulent motives, convey his farm to his neighbor, who knows the grantor's design ; and he may afterwards repent of this improper and dishonest proceeding, and obtain

a reconveyance of the farm. Can he not after this, honestly and fairly convey the farm to me, for a valuable consideration, though I did know of his having, years before, made a fraudulent conveyance ? Or must I lose the farm, in consequence of my grantor's former misconduct ? We apprehend not. In the present case, however, the fraud practised by *Lane* respected another farm, now owned by another man ; and nothing in the case has been disclosed which, in any degree, contaminates the title conveyed by *Briggs* to *Lovering* ; and that is the title which the demandant claims and holds, under the contested deed from *Lovering*. Our opinion is that the testimony of *Briggs* and *Lane* was improperly admitted ; and even when admitted, is not sufficient to sustain the defence.

*Verdict set aside, and new trial granted.*